Good morning, and may it please the Court, I'm Jordan Eth on behalf of the First Solar Defendants. I'd like to reserve three minutes of my time. The District Court believes that there is an irreconcilable conflict in this circuit between two lines of cases on the issue of loss causation in private Rule 10b-5 actions. There is no conflict. There is one line of cases, and it has been repeatedly confirmed. Four decisions of this Court—Metzler, Oracle, Luce, Apollo—in all four decisions, the test for loss causation was expressly spelled out. It's plaintiff's burden to plead and to prove that an alleged misrepresentation was revealed to the market, that the fraudulent practices themselves were revealed to the market. The false statement was revealed. So do you think that the so-called materialization of risk theory applies in the Ninth Circuit? The materialization of the risk theory, Your Honor, I think would be inconsistent with a couple of Ninth Circuit cases. But the Ninth Circuit has not squarely addressed it, not squarely. It came close in Nuveen. Excuse me? It came close in Nuveen. Nuveen said that Nuveen involved a privately traded security. Right. The holding in Nuveen was that loss causation applies even in that context, and summary judgment was affirmed for the defendants. Materialization of the risk was not raised by the plaintiffs below, was not addressed by the district court below. And the reason I started by saying it would be inconsistent with a couple of Ninth Circuit rulings is that in Luce, the Court said the test in the Ninth Circuit is, and it laid out this test that I just described. And in Metzler, the Court said Dura confirms what the plaintiffs must plead. Now, I agree. The Ninth Circuit has not squarely addressed materialization of the risk. But that was not argued below. And it's not argued here either. But so materialization of risk I don't believe is part of this case, but it has not been squarely, squarely rejected. Well, what about if in Oracle, in Ray Oracle Corporation securities litigation, we stated that a plaintiff cannot prove loss causation by showing that the market reacted to the purported impact of the alleged fraud rather than to the fraudulent acts themselves. How do you reconcile this statement with the standard in Ray, I don't know how you say it, Daewoo Systems, where we held that the loss causation requires only that the plaintiff demonstrate a causal connection between the deceptive acts and the injuries suffered by the plaintiffs? Your Honor, are you referring to Luce just then? However we, I don't know how. Luce versus Immersion, I believe. Is that? I think you're going back. She's going back to Daewoo. Daewoo. Oh, to Daewoo. Yeah. Okay. The way that I harmonize them is by citing to the Ninth Circuit's own harmonization of Luce, of Daewoo. The Ninth Circuit itself looked at Daewoo in Metzler and in Luce. And what the Ninth Circuit said in Metzler is Daewoo confirms, confirms the plaintiff must plead that the fraudulent practices themselves were revealed. What Metzler said is that the reason that Daewoo went forward is because the causal link involved revealing the falsity of the practices, specifically citing the disclosure in Daewoo by the company defendant that there had been $10 million in unbilled receivables, and that an analyst said the company had been manufacturing earnings. This came up again in Luce versus Immersion, where the plaintiff said almost the exact same thing that the Court just posed in terms of question. What about Daewoo? Does this work under Daewoo? And the Court said no, it doesn't, because Daewoo crucially, using the Court's words, crucially looked at the disclosure of the false practices as the key, which was the disclosure in a case involving alleged accounting fraud of $10 million in unbilled receivables. Oracle cites to, cites to Daewoo as a CF site, citing to the manufacturing earnings issue. So the Daewoo case, which the district court followed, said it was following, the district court said that the Ninth Circuit's own view of Daewoo was wrong. The Ninth Circuit's view of Daewoo isn't wrong. It's binding. It's binding. The Ninth Circuit has interpreted Daewoo at least twice, in Luce and in Metzler, and that is what is binding on the district court. I am interested in what you're doing. This is obviously a very important issue. It comes up with very large cases, and it's somewhat confusing. I'm a little more generous with Judge Campbell's outline, 49 pages of pretty good work, and bringing this to our attention. Unfortunately, we haven't gone on bank on all these cases. We're not in a position to take the case and make changes. So your effort is, I guess, to harmonize so that you can go on with your case. I was impressed with Lloyd. It strikes me that we're just trying, that it's a good argument, that we're just trying to say the same thing but in different words. And Lloyd points out that they're all a variant of proximate cause. That makes good sense to me. Proximate cause is something we deal with. We understand it. It seems to me that's essentially what you're trying to find in these cases, and the wide variety of our cases could be just a way of showing proximate cause. What's wrong with Lloyd's approach to this, that they're just a variant of proximate cause and they can be harmonized in that way? There's nothing wrong with the Lloyd decision. What the Lloyd decision does is it answers an open question from Luce, from footnote three in Luce. What Luce said is that if a company announces an internal investigation of its own revenues and the stock falls, that as a matter of pleading isn't enough, isn't enough for loss causation because it would just lead to speculation. And even if the stock went down, that's not enough. And the court said in a footnote, well, if there's later on a confirmatory disclosure of an inaccuracy, then maybe that would be enough. And what Lloyd answers is that question. Lloyd says, well, we have an SEC subpoena, which wouldn't be enough by itself. The stock fell 22 percent. Multiple analysts said this SEC subpoena looks like it has to do with these loan loss reserves that we're questioning. And then within a month, there was a corrective disclosure. And the stock did not react to the corrective disclosure. The Ninth Circuit said in those circumstances, that reveals falsity. Now, proximate cause is a pretty broad term. And what the courts have said is variant approximate cause and has repeatedly said in this context, fraud on the market cases. If a market doesn't know about something, it's not incorporated into the price. Fraud on the market cases, that there has to be a revelation of falsity. Not only has the Court said that, these holdings, if they were, if we had a sort of broad proximate cause kind of test, the holdings of Metzler, Oracle, all these cases would have come out differently. Well, you, okay, talk about the, oh, I'm sorry, Judge Walz, go ahead. Why isn't that sufficient under the loss causation is just a variant of proximate cause? It is a variant. And the way that's applied, the test that's applied at the pleading stage and at the proof stage in the Ninth Circuit is as stated in those four cases plainly, revelation of falsity. Stay with Lloyd for a second. Sure. Is Lloyd sufficient to answer the question of Judge Campbell that he's put up in his 49 pages? Can all those cases be developed under a banner of proximate cause? That's the overall variant of proximate cause is the banner, is the overall banner. Yeah. But the test that's used is revelation of falsity. And Lloyd applied that and said that the, there was a corrective disclosure that made the earlier statements untrue. But he says because loss causation is simply a variant of proximate cause. Yes. Answering the question that was left open in the Luce case, not saying, well, we're abandoning what Luce said is the test. I didn't see anything in here that said that's what they're specifically answering in Lloyd. It's in the early part of the decision. It said this was what was left open by Luce. And then we hold that, and that's expressly stated, we hold that an announcement of an investigation coupled with a subsequent disclosure of corrective information is sufficient. For approximate causation. To meet the loss causation test. But just labeling approximate cause doesn't answer the question. How is that applied in the Ninth Circuit? And I agree that the Court's ruling was very detailed and very thorough. And what the Court said is that under the four cases from this Ninth Circuit, summary judgment would be granted in full. Well, okay. So let me take you a little bit in the weeds and assume that we get past that we don't have to go on bonk on this. Even if we were to agree with you that the district court applied the wrong loss causation standard and should have applied revelation of falsity test, why haven't the appellees proffered sufficient evidence showing market knowledge of the alleged fraud, i.e., the concealment of the low power module and heat deterioration issues for more than a year? The plaintiffs themselves never argued that under revelation of falsity they meet the test. In fact, in their brief here, page ---- Okay. But we have it here. Why can't we apply it here? Why haven't they proffered enough is what I'm asking you. Because what they've proffered is evidence of impact. That's what they've proffered, that the alleged defects led to financial problems. Those financial problems led to disclosures. Those disclosures led to stock declines. That's what they've proffered. Well, I guess what you assert, by asserting, as you do in your briefing, I'm looking at blue at 37, that the appellees have not untangled the market alleged reaction to the low power module and heat deterioration issues at summary judgment, aren't you conceding that there exists a triable issue of material fact as to whether the alleged fraudulent practice caused their losses? No. No, we're not, Your Honor. We're not conceding that at all. And what the plaintiffs have done is they've said under revelation of falsity, three of the corrective disclosures, the alleged corrective disclosures, the ones from 2011, they don't even argue that those would meet the test. They don't even cite to that. All right. Let's say if we were to conclude then that the district court erred in discerning a conflict in this circuit's case law, where none exists, if we were to include that, to conclude that, as I think you're asking us to do, must we reverse and remand? Must you, excuse me? Must we reverse and remand? You can just answer the certified question or you can reverse and remand and ask that summary judgment, direct that summary judgment be entered. I believe the Court can do either. Would you like to reserve? Excuse me? Would you like to reserve? Yes. Thank you. Hear from the plaintiffs? Good morning, Your Honors. Good morning. I'm Luke Brooks on behalf of the plaintiffs. I want to start by correcting something that Mr. Eth said. In the district court, we did argue both the traditional standard in the Ninth Circuit and the standard that was mentioned in Nuveen, materialization of the risk. We argued it for every single one of the drops. This is one example on supplemental excerpt of record, page 107, because the massive charges and business-threatening reputational harm that First Solar incurred were foreseeable risks. The evidence is also sufficient to create a genuine issue of material fact under the, quote, risk materialization theory. We argued that on every one of the declines. This case really boils down to the question of whether plaintiffs are required to prove loss causation simply by relying on defendants' own words or whether we can use defendants' words along with additional evidence to establish proximate cause. What defendants are asking the court to do in this case is disregard all evidence of proximate causation unless that is a contemporaneous disclosure at the time of the stock price decline. They say nothing else is relevant, but that's not the law in this circuit, and it's not the law under Dura. Dura establishes a proximate causation standard. This Court's cases analyzing Dura follow that standard and hold that loss causation can be shown in an infinite variety of ways, not just one way, not just a corrective disclosure that admits the fraud or what they're now saying mirrors the false statement. Lloyd expressly rejects that requirement. And the facts of this case illustrate why plaintiffs can't be constrained to proving loss causation simply using the defendants' words. There were six stock price declines in this case that we alleged at summary judgment caused our loss. The district court dismissed one of them, which was the firing of the CEO, a surprise firing, which had analysts inferring that there were major problems at the company and caused a massive stock price decline. Under the test that Judge Campbell used, he found that we hadn't made the requisite connection because we hadn't shown that the CEO, Gillette, was fired specifically because of the concealed product problems. Is that, I guess, is that, is your argument there that you can't just pull that out of all the other facts, that you can't view the firing in a vacuum, that if that were all you had, that would be trouble for you? There are two points, Your Honor. The first is, yes, Metzler says that the declines can be looked at altogether and multiple declines can lead to loss causation. And the second point is that the court applied a rigorous test in this case. Dura's proximate causation standard is intended to exclude losses for plaintiffs when they're not connected to the fraud, the so-called, you know, plaintiff insurance, investor insurance. That's not what happened in this case. For each of the declines, there was a connection. Three of the declines on July 29th, 2010, February 2011, and then the final decline in February 2012, the defendants expressly connected their disclosures to both the heat defect and or the LPM defect and the financial ramifications of those defects. They expressly said, for example, in July 2010, when they had previously fraudulently concealed the existence of the low-power module problem, we have this low-power module problem. In addition, they took down their guidance by $100 million. And internal documents establish, and the defendants have not disputed, that that guidance takedown was due entirely to revenues lost from the LPM problem. That wasn't disclosed to the market, but it's clear. The $100 million revenue guidance reduction is related and was directly caused by the LPM problem. The reason they lost revenues is because in order to remediate the problem, in order to make their customers whole, they had to take away because they were supply constrained from sales in the market. The February 2011 decline is similar. On that decline, previously the defendants had said that our warranty reserve covers this entire problem. Well, they took another hit on the warranty reserve, and they also reduced guidance again or missed guidance. And the CEO specifically said the reason we missed guidance is because we steered modules into the remediation. This was a problem that investors believed was already under control. The final disclosure also reveals both the heat degradation problem for the first time that had been fraudulently concealed for years and a massive warranty charge relating to the LPM problem. Originally, it was $27 million, something around $27 million for the LPM defect. At the end, it was over $200 million in warranty. And all throughout the class period, the defendants had said, we have this in our financials. This is all covered. And the analysts, after that February disclosure, were shocked. And they said, you told us this was all in your financials. Citibank said, on the last conference call, the 3rd of November, I asked you about warranty expenses. You said that it had all been taken into account in the financials. Stiefel-Nicholas, we expected this had been resolved already. A headline, the ghost of manufacturing excursion. These analysts thought that it was over. Returns with $164 million in charges. So those three declines are directly connected to express revelations of falsity. They're the mirror image that Lloyd says we don't need. The two other declines are also important. In May of 2011, in April of 2011, defendant Eagle Sham went to the first solar board and said, this heat degradation problem is going to cost us between $30 and $60 million in revenues for the rest of the year 2011. They went out to the market and announced disappointing revenue guidance. And, again, internal documents show they took their guidance down to account for the lost revenues from the heat degradation problem. And the defendants have even admitted it in the summary judgment briefing below. But when they. I kind of want to pin you down on your positions about the. All right. About the error. The district judge perceives an irreconcilable conflict. What's your position on that? There is no conflict. The rule in this circuit is a proximate causation rule. It emanates from the Dura decision, which holds expressly that plaintiffs need to prove proximate causation and economic loss. All right. If we get past that and say there isn't, that the district court erred in determining this conflict, must we reverse some remand here? No. I don't believe so, Your Honor, because the rule that the court applied, which is that the very facts misrepresented or omitted by the defendant were a substantial factor in causing the plaintiff's loss, that's the rule set forth in Nuveen. The court followed that rule, the correct rule. That's a proximate causation rule. It's not a more restrictive rule that applied because of factual circumstances in certain cases that arose in this circuit. It's the broader proximate causation rule. And Lloyd confirms it. Lloyd says we need to make sure that the corrective disclosure relates back to the prior misrepresentations. If you apply the ‑‑ if we adopted the view of First Solar and said the revelation of falsity test is the one that applies in this circuit, do you agree with him that your claims fail? I don't agree with him, Your Honor, that our claims fail. The two disclosures in May of 2011 and December of 2011 don't have a revelation that connects the financial performance to the fraud expressly. Those declines can be viewed holistically with the rest of the case, but each of the other revelations, it's a mere fact‑for‑fact disclosure. I mean, for the first year and a half of this class period, the defendants fraudulently concealed they had a massive product defect, and then they disclosed it, and the stock price dropped. So the only thing ‑‑ Okay, but let me just ‑‑ you said two of them might not get past the revelation of falsity. Two of them. But you said holistically they do. Correct, Your Honor. So is that a little bit like when you do hostile work environment that you can go to things outside the statute of limitations to prove the hostile work environment that's within the statute, or is that ‑‑ Well, it's similar to what the court did in Lloyd and what the court expressly said in Metzler, which is that the declines themselves can be viewed together to determine whether the proximate causation test has been met. So these two declines ‑‑ And the two that you're talking about, is one of them the CEO firing? No, that's the third decline. That one also, Judge, is one that, depending on the test and depending on the rule, could come back into play. But I'm talking about the ones where we established a direct link between the costs of the remediation or the write‑down of the inflated modules that they were covering up with the accounting fraud and the guidance reductions or the revenue misses. Those are the two, and they don't disclose this is the reason. And that is precisely why we can't have a rule that requires that, because the defendants in December of 2011 circulated an internal conference call script. They had an earnings call script that identified this write‑down that they were going to have to take, and in the script they attributed a certain amount of EPS decline to that write‑down, and there was a note in the script. And the note said, not sure we want to say this or say it this way. And ultimately they didn't disclose the reason that they had taken it down. And that's at the supplemental excerpt of record. Okay. I'm still not quite ‑‑ I kind of want to pin you down on this. So what our chief asked you was if the district court said if it were to apply the revelation of the falsity test that the appellants are entitled to summary judgment in full. So I think what the chief said was if we say that's the test, do you lose? No. So the district court's wrong on that. Well, the district court did not apply a revelation of falsity test. But it said if it was to do that, you would ‑‑ But the test that the district court looked at to determine that we would lose was one that the market must actually learn that the defendant engaged in fraud and reacted to the fraud itself. That's different than was the false statement corrected, was the practice that was concealed by the fraud revealed. That's did they commit accounting fraud. And you see in their briefs they make this point. They say we never restated. We never ‑‑ the SEC never investigated us. Their position is that unless the market knows that they've been defrauded specifically, there's no loss causation. And that standard has been rejected in numerous cases in the Ninth Circuit. So tell me specifically how, if falsity of the risk is the test, how you survive. Well, we survive on the July 2010 disclosure because they, again, omitted to tell the market and fraudulently concealed that they had a module defect and then disclosed it. At the end of the class period, the defendants had fraudulently concealed this problem where their solar panels didn't work well in the sun and then disclosed it. During the entire class period, the defendants kept telling the market, our warranty covers all of the expected charges arising out of this problem. And the district court found that we established a tribal issue of fact that that was false. And at the end of the class period, there was a $125 million warranty surprise. So that corrects the statement that our warranty covers these problems. So I think that we, even if the court applies a more stringent test that does require the defendants to utter some words correcting the falsity, we certainly survive. And we're well past where the plaintiffs were in Dow. We're well past where the plaintiffs were in Burson, where essentially it was an internal link between the miss and the fraud. There were stop work orders in that case, and they led to a financial miss, and the court found, well, you've established the link. We're well past that standard. And how do you deal with Oracle? Well, Oracle was a case where the court first analyzed, because the plaintiffs had alleged it, whether the declines and the disclosures themselves put the market on notice of the fraud. But the court didn't stop there. The court went on to look and to determine what caused the fraud. And the fraud there was or what caused the stock price decline, excuse me. The fraud there was a product defect, 11i, and the court determined based on 100 subpoenas that the plaintiffs had sent out, that customers were not failing to buy 11i because of some market issue, because of the product problem, but that there was a recession looming and people had stopped buying for those reasons. That's what the analysts said, and they were doing channel checks internally with the customers. That's what all the customers said in discovery. So the court in Oracle did look past what was disclosed to the market and looked to see whether there was a link. All of these cases that the defendants rely on involve cases where there was no false statement and no cyanide. In Apollo, for example, the disclosures were, the false statements were ruled inactionable puffery. As a matter of law, the market doesn't rely on inactionable puffery. The other statements in Apollo had been disclosed. So the truth was already on the market. Of course there's no link there. But in this case, there's a link. I hate to run over, but I'm a little lost on what we're going to decide here, so maybe you could come back and help me out. It seems to me that both sides are in agreement that the law is clear, that there's really no disagreement. Now, the reason the case is here is because of Section 1292B, that there's a disagreement, and we had a motions panel look at it, and they said, okay, it's going to come up. But this goes to our jurisdiction, so we have to examine it ab initio here as to whether there's a real disagreement. Both of you say there's no real disagreement. So what do we do with the case? Well, if you're right in your arguments, we have no jurisdiction, and we would dismiss the issue before us on the question of Section 1292B, and we'd send it back down for you to do the work. We can't decide the case you're arguing to us. All we can decide is whether or not there's a substantial difference requiring us to make a decision. Both of you agree there is no one. So I'm wondering why we're ever going to get to the issue you're arguing. As a matter of subject matter jurisdiction, it seems to me you've convinced me that from your arguments that there is no any problem that the district court has put up to us. Therefore, we don't have subject matter jurisdiction. Therefore, we should dismiss and get it back to the trial court and go to work. We agree, Your Honor, and we move to dismiss on those grounds. Lloyd resolved any lingering doubt, if there were any in the first place, about whether there is a rule that requires plaintiffs to establish loss causation in one particular way through the defendant's disclosures and what they say to the market. Lloyd quoted the Supreme Court and said proximate causation is the standard, and proximate causation can be established in an infinite variety of ways. So we've renewed our motion in front of this Court, and we agree that there's no conflict. We disagree with their interpretation of why there's no conflict. They take the position there's no conflict. I'm sorry, Your Honor? Both take the position there's no conflict. It seems to me you're united on that point. Thank you, counsel. Thank you. We'll hear about it. I think I have 2 minutes and 13 seconds for a few points. First, in terms of what the plaintiffs were arguing, it's not proximate cause. It's an argument that's been rejected twice by this Court. It's the impact test. Oracle and Loos specifically rejected the impact test. It's a but-for kind of test. It's not a proximate cause test. It says because you had a problem, that led to a reduction in guidance, that was announced, and that led to a decline in the stock price. Oracle and Loos, right on point. And on Oracle, the counsel only referenced one part of Oracle. Page 394 of Oracle refers to the accounting fraud allegation. The Court lays out the exact reasons, if applied here, why the revelation of falsity test would lead to summary judgment. Must it be defendant's words? Of course not. We've never argued that. There are an infinite variety of ways, whistleblowers, media exposés, SEC actions, DOJ actions, auditor resignations, all kinds of ways for falsity to be revealed, not just from defendant's own words. But the test is revelation of falsity. Finally, on the jurisdictional point, the issue is whether reasonable jurists could disagree. We're advocates. We each believe strongly in our position. Do we think that Judge Campbell is a reasonable jurist? Absolutely. Absolutely. And he found that there was a basis for disagreement. We oppose the motion to dismiss because we believe that that, and that's one of the three parts of the test, that he's correct, that there is a reasonable, a reasonable jurist could disagree with that. Of course, here we're at opposite ends of the spectrum as to what it is. Of course. And we're not in a position to overrule those district courts, even taking it on this limited area, because we're just a panel of three. It'd have to go in bank. But earlier on you indicated to me that you could get this within the scope of proximate cause, but now you tell me that, no, there's a different test. It isn't all within proximate cause. Have you changed your position earlier? No. I may have misspoken. I may have misspoken. What I was saying is that what plaintiffs were just saying is they were arguing for the impact test. The impact test is a test that's been rejected by the Ninth Circuit twice. And that says that you can have a misrepresentation which leads to financial problems. When the financial problems are revealed, you can then say that that qualifies as revealing falsity as a form of proximate cause. That has been rejected by the Ninth Circuit twice, in Oracle and Luce. That's what I was saying. And you understand, of course, that we can't change any law. Correct. And so we have to decide your vision of the law is correct and not overrule any other cases. Correct. And that's what I was saying this Court has done with respect to Dow already. Thank you, Counsel. The case just started to be submitted for decision. Thank you for your arguments. It's been very helpful to the Court. I think somebody left their glasses there. Is that yours?
judges: Wallace, Thomas, Callahan